IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARTHA SWANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.:  3:24-cv-00244-RAH-JTA |
| vs. ) | |
| ) | JURY DEMAND |
| EAST ALABAMA HEALTH CARE ) | |
| AUTHORITY, DBA EAST ALABAMA ) | O p p o s e d |
| MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF DEFENDANT EMPLOYEE ROBEN CASEY UNDER FED. R. CIV. P. RULE 37(1), OR FOR OTHER SIMILAR RELIEF**

COMES NOW the Plaintiff, by and through counsel of record, and serves the following Motion to Compel Deposition Testimony on Defendant East Alabama Medical Center [EAMC] employee Roben Casey. In support of this motion Plaintiff respectfully shows the following:

INTRODUCTION AND CERTIFICATION THAT, IN AN EFFORT TO
OBTAIN THE RELIEF SOUGHT WITHOUTH COURT ACTION,
MOVANT HAS IN GOOD FAITH CONFERRED OR ATTEMPTED TO
CONFER WITH THE PARTY FAILING TO MAKE DISCOVERY

Plaintiff Martha Swann seeks – and has sought –  to depose Defendant EAMC's employee, Ms. Roben Casey, under Fed. R. Civ. P. Rule 30(a)(1). Defendant refuses to allow this deposition to go forward. Over the past several months Plaintiff has served numerous deposition notices on Defendant regarding this employee. Attorneys for the

1

parties have exchanged emails on this matter. On the morning of June 2, 2025, at undersigned Plaintiff's counsel's request, counsel for the parties conferred by telephone regarding this issue. Plaintiff's counsel attempted one last time to resolve this matter without the need to seek court action. Defendant EAMC's counsel declined to agree to the deposition at issue.

This case's discovery cutoff date is June 13, 2025. Plaintiff respectfully seeks an Order from the Court compelling Defendant to put this employee up for deposition on either June 12 or 13, 2025, or in the alternative, allow Plaintiff through June 27, 2025, to otherwise effectuate deposition of this EAMC employee (with such Order compelling both the Defendant's attorneys and employee to cooperate reasonably with Plaintiff's counsel going forward; Plaintiff's counsel will cooperate as well). Undersigned Plaintiff's counsel further notifies the Court that the deposition at issue is anticipated to take no more than three (3) hours.

### *Summary of Case Relevant to the Discovery Dispute*

Plaintiff Martha Swann's lawsuit alleges her former employer, Defendant EAMC, subjected her to unlawful discrimination based on her sex, female, and retaliation, both under the Equal Pay Act of 1963 and Title VII of the Civil Rights Act of 1964. Plaintiff seeks both compensatory and punitive damages against EAMC, as well as injunctive relief. Plaintiff contends that in 2022 she was discriminated against in pay compared to one or more similarly situated male coworkers, in terms and conditions of employment,

and that EAMC retaliated against her for opposing pay discrimination, both in 2022 and in January 2023.

Regarding the January 2023 retaliation, Plaintiff notes that she was fired by EAMC on December 30, 2022, within 72 hours of her getting into an argument with her supervisor, EAMC Clinical Engineering [CE] Department Director John Morris, which, according to Plaintiff, included her (again) complaining about her pay compared to male coworkers. EAMC disputes this and the dispute is a factually material one.

Plaintiff timely submitted a grievance to her (now former) employer, EAMC, within five (5) days of it firing her. Plaintiff's grievance was her attempt to be reinstated or rehired by EAMC. On January 24, 2023, EAMC convened a "grievance panel" to conduct a "grievance hearing." Plaintiff attended the grievance hearing along with the Panel members: Seven (7) EAMC Vice Presidents. Among the EAMC Vice Presidents who attended Ms. Swann's grievance hearing were Human Resources Vice President Susan Johnston, Executive Vice President and Chief Operating Officer Sarah Nunnelly, and Vice President (not "Executive" Vice President) and General Counsel Roben Casey. By EAMC's admission, Ms. Casey did not attend Ms. Swann's grievance hearing in her capacity as a legal representative of EAMC. As of the grievance hearing date, Ms. Casey was also – and it is believed currently remains – EAMC's "Compliance Officer."

Plaintiff contends EAMC also retaliated against her by and through its refusal to conduct a thorough, good faith, investigation of her discrimination complaints: during

3

her employment in 2022, during the January 2023 grievance process, and by and through the grievance panel – which could have, but through bad faith and retaliation, refused to reinstate or rehire Plaintiff (at least in part owing to her opposing workplace pay discrimination). Defendant denies these allegations *in toto*.

### *Summary of the Discovery Dispute*

**1.** On September 10, 2024, Plaintiff served her Rule 26 Initial Disclosures on Defendant, which included the following:

Plaintiff's Initial Disclosure 26(a)(1)(A)(i):

**(p)** Roben Casey – EAMC VP General (In-House) Counsel. Knowledge of facts set forth in the Complaint, particularly involving, but not limited to, Ms. Casey's involvement with the January 2023 "grievance hearing."

A couple minutes later, Defendant served its Initial Disclosures 26(a)(1)(A)(ii) on Plaintiff, which included the following Defendant's Rule 26(a)(1)(A)(i) disclosure:

**e. All individuals identified in Plaintiff's Initial and/or Supplemental Disclosures.**

Not only did Defendant not object to or dispute Plaintiff's disclosure of Roben Casey as an "individual likely to have discoverable information – along with the subjects of that information – that the disclosing party may use to support [her] claims and defenses," but, in fact, by and through its above-noted reference, adopted Ms. Casey as one of EAMC's "discoverable information" individuals.

2. On January 17, 2025, Plaintiff served Deposition Notices on several EAMC employees, including Roben Casey. These Notices did not specify deposition dates or places, but, rather, sought to alert Defendant who Plaintiff would likely depose. Defendant raised no objection to the Casey deposition.

3. On February 18, 2025, Plaintiff served a Notice to Serve a Rule 45 Subpoena on Defendant regarding Roben Casey, instructing the deponent to bring and produce documents, notes, from the January 24, 2023, grievance hearing to her deposition. Soon thereafter Plaintiff informed defense counsel that they could disregard a Rule 45 Subpoena, as Plaintiff would opt for a *Supoena Duces Tecum* under Rule 30. Still, Defendant raised no objection to the Casey deposition.

4. On March 11, 31 and May 19, 2025, Plaintiff served Deposition Notices / SDTs on Defendant re: a Casey deposition. It was not until May 21, that defense counsel first opposed the Casey deposition.

5. Defense counsel's arguments were, in sum:

    (a) Ms. Casey was an "Executive" and that the "Apex Doctrine" applied.

    (b) That as a "Apex" person with EAMC, she had no "unique, non-repetitive" information to provide;

    (c) Ms. Casey was EAMC's (in house) legal counsel, so the attorney-client privilege attached;

6. EAMC's positions are, in fact, and not grounded in this case's facts or the law.

7. Both sides agreed to put the Casey Deposition on a "back burner," to table it, until after the first round of depositions occurred from May 27-29, 2025. The parties agreed that the Casey deposition <u>might</u> go forward on June 12 or 13, 2025, after further discussion following said "first round."

8. On May 30, 2025, undersigned Plaintiff's counsel notified opposing counsel that the Casey deposition needed to go forward on June 12 or 13, 2025. Defense counsel maintained its objections. In correspondence attorneys for both sides made their positions known to the other, the most recent "back and forth" correspondence occurring late afternoon on May 30, 2025.

9. Plaintiff conferred by phone with defense counsel on this, the 2nd day of June 2022, in an attempt to break the stalemate over the Casey deposition.

*Ms. Casey is not an "Apex" employee*

1. As of January 24, 2023, Sarah Nunnelly was EAMC's "<u>Executive</u> Vice President and Chief Operating Officer;" whereas Roben Casey was an EAMC's "Vice President and General Counsel." **EXHIBIT 1, and its attached Exhibits A and B**.

2. EAMC and its counsel have never objected to the Sarah Nunnelly deposition – Ms. Nunnelly was/remains a <u>higher</u>-ranking EAMC official than Roben Casey. Ms. Nunnelly did, however, take notes, which Plaintiff obtained through discovery.

3. In her last week's depositions (May 28, 2025), EAMC Human Resources VP

6

Susan Johnston testified that in January 2023 EAMC's "Corporate Compliance Policy" was one of the few documents she reviewed during Martha Swann's grievance process.[1]

4. As of January 24, 2023, the grievance hearing date, Roben Casey also wore the hat of EAMC's "Compliance Officer" – Ms. Casey was the <u>sole</u> EAMC employee with final approval authority over EAMC's Corporate Compliance Policy and Standards of Conduct." **EXHIBIT 2.** In this role of final arbiter of the Compliance Policy's contents, Ms. Casey's testimony would be unique. Undersigned counsel, without opening his work product to the Court, Defendant, or to the public, notes here he finds that Ms. Casey's / EAMC's "Compliance Policy" deeply flawed when it comes to this case and at least some of Plaintiff's claims and EAMC's defenses.

5. <u>Roben Casey attended and participated in Plaintiff's January 24, 2025, "grievance hearing."</u> Arguably – along with Human Resources Vice President Susan Johnston – <u>Ms. Casey spoke the most of any of the panel members</u> and <u>asked the most questions of Plaintiff</u> (Ms. Swann would say was belligerent towards) during the course of that grievance hearing. Ms. Casey did not even pretend to be neutral.

6. Perhaps the foremost Alabama apex case shows how inapplicable the doctrine is to the facts at hand. In *Salter v. Upjohn Co.*, Plaintiff's sought to depose a Michigan-

---

[1] As Susan Johnston's deposition was taken less than one (1) week prior to this filing, undersigned counsel does not yet have the benefit of a deposition transcript. Instead, he relies on his notes from the Johnston deposition. He is certain about this point, though. That is, that Ms. Johnston testified to reviewing EAMC's Compliance Policy as part of her duties related to Plaintiff's grievance process.

based corporate president in Montgomery, Alabama. *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979). But Salter failed to articulate what unique, relevant knowledge the President had the regarding issues at stake. *Id*. at 651. Additionally, the President had already testified before the U.S. Senate on similar facts, which Plaintiffs had access to. *Id*.

In the case at bar, Roben Casey is not a "corporate president" who may sometimes be sometimes be shielded from deposition – where such true apex officer has zero involvement with any of the issues or knowledge of the issues giving rise to the action. Such situations are extraordinary and not at all applicable to Roben Casey's direct and personal role in this case. *In re Mentor Corp.Obtape Transobturator Sling Prods. Liab. Litig*., 2009 U.S. Dist. LEXIS 111149, at *3 (M.D. Ga. Dec. 1, 2009) (quoting *Minter*, 258 F.R.D. at 127) (permitting deposition of CEO where CEO was involved in business practices at issue in lawsuit). A deposition of an executive is generally permitted, "where [an] executive has personal knowledge and involvement in certain relevant matters or where conduct and knowledge of the highest corporate levels are relevant in the case. *In re Mentor Corp*., 2009 U.S. Dist. LEXIS 111149, at *3 (citing *In re Bridgestone/Firestone, Inc. Tires Prods. Liab. Litig*., 205 F.R.D. 535, 536-37 (S.D. Ind. 2002)(Emphasis added). Such is the case here.

**7.** Rule 26(b) of the Federal Rules of Civil Procedure permits parties to:

"...obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

8

> considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

Fed. R. Civ. P. 26(b)(1).

This Rule is, or should be, bedrock, sacrosanct.

The party who resists discovery bears the burden of showing the grounds for its objection with specificity. *DeMartini v. Town of Gulf Stream*, 2017 U.S. Dist. LEXIS 55213, *3 (S.D. Fla. Apr. 11, 2017) (*citing Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)); *see also Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 469 (N.D. Tex. 2015) ("[T]he amendments to Rule 26(b) and Rule 26(c)(1) do not alter the basic allocation of the burden on the party resisting discovery to . . . specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of proper discovery (as now amended) or that a discovery request would impose an undue burden or expense or is otherwise objectionable."). A party seeking to prevent a deposition carries a **heavy burden** to show why the discovery should be denied. *In re Cathod Ray Tube (CRT) Antitrust Litig*, 2015 U.S. Dist. LEXIS 147414, * 176 (N.D. Cal. Sept 18, 2015)(Emphasis Supplied).

Casey is not a distant, absentee, EAMC president. She not only maintains an office at EAMC in Opelika, it *is* her primary place of business; the hospital where Plaintiff was employed.

9

8. Factors of proportionality under Fed. R. Civ. P 26(b)(1) weigh heavily in favor of allowing Plaintiff Swann to depose Ms. Casey. First, the importance of the issues at stake is particularly high. EAMC's discriminatory treatment of and firing Martha Swann, then failure or refusal to conduct a thorough, good faith investigation of its termination, then, on top of that, failure or refusal to conduct or follow a neutral, good faith, grievance process when Plaintiff Swann went that route, all in violation of her federally protected rights, is immensely important, not only to Plaintiff Swann herself, but also all those EAMC employees who may suffer from this company's systemic, discriminatory, flawed practices, bias, protocols, policies. Second, the claimed damages and relief – lost income, emotional distress, punitive damages, injunctive relief, – suggest that the amount in controversy at stake in this case is (or can be) high. Third, at this point only Defendant has access to meaningful knowledge from Ms. Casey. Without Ms. Casey's deposition Plaintiff cannot access the very person who – as a preview of coming events – tried to force an "Insubordination" charge on Plaintiff where one or more EAMC officials last week admitted under oath that such charge was non-existent in the very paperwork and accusations used to fire Plaintiff on December 30, 2022. Without the opportunity to depose Roben Casey, a huge and important evidentiary gap will remain.

9. It should be Plaintiff's, not Defendant's, choice and decision – within reason and in accordance with Rule 26(b) and applicable case law – regarding which witnesses

to glean case-supporting information from. *Hickman v. Taylor*, 329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) (where the Supreme Court of the United States noted that deposition-discovery rules are to be treated broadly and liberally in order to provide both parties with relevant information); see also, Fed. R. Evid. 401 (evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action").

10. Roben Casey should not be considered an "apex" officer covered under this doctrine. The doctrine is intended to protect the highest level corporate officers from abusive, harassing depositions when they are sought by virtue of their positions *alone*, lacking other relevant knowledge. *In re Mentor Corp.*, 2009 U.S. Dist. LEXIS 111149, at *3. There is no "harassment" here. Plaintiff merely seeks to depose a person who attended her grievance hearing, who interacted with Plaintiff, who accused Plaintiff of "Insubordination," and who was one of a couple EAMC grievance panel members who "lead the charge against Plaintiff. Ms. Casey's state of mind and understanding of the facts are not only relevant, but arguably key to part of Plaintiff's retaliation claims.

11. At the very least, Ms. Casey's conduct and knowledge is relevant to Plaintiff's claim for punitive damages. *In re Bridgestone*, 205 F.R.D. at 536-37 (wherein the Court upheld a Magistrate order allowing Plaintiffs to depose Ford's CEO because conduct at Ford's high levels was relevant to the claims and Plaintiff planned to depose Mr. Ford at company headquarters).

*EAMC concedes Roben Casey* **did not** *participate in Plaintiff Swann's January 24, 2023, Grievance Hearing as its General Counsel*

    **1.** In its answer to Plaintiff's Complaint Para. 100[2], EAMC concedes that:

[Roben Casey] was a member of [Plaintiff's January 24, 2023] grievance panel and not present at this hearing in her capacity as a legal representative of Defendant [EAMC] in the hearing.

    **2.** Plaintiff only seeks to depose Ms. Casey in relation to, **(a)** her participation in the January 24, 2023, grievance hearing; and, **(b)** her role as the final authority to review / approve / sign-off on the EAMC Corporate Compliance Policy in effect during 2022 through January 2023.

    **3.** Where an attorney functions as an investigator, he is not functioning as an attorney and is not entitled to assert the attorney client privilege. *Rusnak v. Dollar Gen. Corp.*, 1:04CV00313, 2005 WL 2840740, at *1 (S.D. Ohio Oct. 28, 2005). Similarly, "[i]nvestigatory reports and materials are not protected by the attorney-client privilege or the work-product merely because they are provided to, or are prepared by, counsel." *Koumoulis v. Independent Financial Marketing Group, Inc.*, 295 F.R.D. 28, 37

---

[2] Complaint Para. 100. EAMC's lawyer attended the hearing, while Johnston made it crystal clear to Plaintiff that she, Plaintiff, was not allowed to have counsel at the hearing. Johnston did this by both emailing Plaintiff around five (5) days before the hearing: "We do not allow any representation at these meetings," and by telling Plaintiff the same thing at the hearing's outset. (Doc. 1, p 17).

Defendant's full answer to Plaintiff's Interrogatory 6 re: Complaint Para. 100: "Defendant denied the allegations in Paragraph 100 of Plaintiff's Complaint because Defendant's General Counsel was a member of the grievance panel and not present at this hearing as a legal representative of Defendant in the hearing."

(E.D.N.Y. 2013) aff'd, 29 F. Supp. 3D 142 (E.D.N.Y. 2014). In the present case, at least during the grievance hearing, Ms. Casey functioned as – at the most – a "investigator" for Human Resources. She certainly did not function as EAMC's lawyer.

   4.  Obtaining or providing legal advice must be the predominant purpose of the communication for the privilege to apply. *Koumoulis*, at 37. Where predominant purpose of attorney's communications was to provide human resources advice, rather than legal advice, the communications were not protected by attorney client privilege; where counsel helped supervise and direct internal investigations, instructed human resources on what disciplinary actions to take, provided human resources personnel with the exact questions to ask during interviews, and drafted detailed summary of investigation, counsel's communications were related to ordinary business decisions and were not protected by the attorney client privilege. See, *Koumolis*, at 44-46.

   5.  In *Neuder v. Battelle Pacific Northwest National Laboratory*, 194 F.R.D. 289, 292 (D. D.C. 2000)(concluding that the attorney-client privilege applies only to communications made to an attorney in her capacity as legal advisor). In wrongful discharge cases – Plaintiff would assert in retaliation cases, too – where in-house counsel took part in the decision to terminate – or, as here, uphold the termination of – the employee, courts generally have held that communications related to a counsel's business decision to terminate an employee are not protected by attorney client privilege. *See Neuder*, 194 F.R.D. At 294.

**6.** On February 12, 2018, Roben Casey (*née* Nutter) was deposed as EAMC corporate counsel and compliance officer in *Aperian Laboratory Solutions, LLC; East Alabama Health Care Authority, d/b/a East Alabama Medical Center; et al.*, 5:13-cv-01626-LSC (N.D. AL). The deposition ran from 9:05 a.m. until 6:19 p.m. **EXHIBIT 3** (p 2, 9-11; 402).

**7.** During the course of the 2018 Roben Nutter deposition she testified that EAMC's legal and compliance departments were "very intertwined;" and that EAMC had considered separating the jobs of general counsel and compliance officer because of conflicts of interest. (EX 3, p 37-38; 115).

**8.** During the course of the 2018 Roben Nutter deposition EAMC's counsel had, and took advantage of, the opportunity to make objections, including those based on attorney-client privilege. (e.g., EX 3, p 273, 274). Plaintiff cites and refers to these passages from Ms. Casey's 2018 deposition to note that she has, in fact, been deposed about factual matters about which she is aware, especially in her unique role as compliance officer (or "Corporate Governance," as the case or nomenclature may be) and that EAMC's counsel had and exercised all rights to make objections as they saw fit.

**9.** On May 30, 2025, during Ms. Swann's and EAMC's email exchanges, EAMC's counsel cited *West Peninsular Title Co. v. Palm Beach County*, 132 F.R.D. 301, 301 (S.D. Fla. 2011) to support the contention that Roben Nutter somehow retained her attorney privilege claim, notwithstanding EAMC's conceding she did not attend the

January 24, 2023, grievance hearing as its legal representative. Indeed, the open lines from *West Peninsular*, in which the Court shielded lawyers from deposition, state:

> The letters [in question] were written <u>while the attorneys were serving in their capacity of County Attorneys.</u> (emphasis added).

This dynamic is simply not in play in the matter at bar.

**10.** On June 2, 2025, one of EAMC's attorneys also emailed a 2020 Northern District of Alabama "apex" deposition opinion entered by Hon. Judge John E. Ott, *Beeman v. Protective Life Corporation*, 2:17CV01234, 2020 WL 13656058, at *1 (N.D. Ala. 2020). Notably, defense counsel (mistakenly) contends Plaintiff seeks to depose Roben Casey under some ethereal "the buck stops here" theory, rather than the fact that Ms. Casey personally participated in the January 24, 2023, grievance hearing and was the Compliance Officer who had the final say-so over the (flawed) Corporate Compliance Policy Human Vice President Johnston listed among the documents she reviewed in connection with Martha Swann's grievance.

Regarding the "buck-stops-here" argument in this case, which Defendant speciously seeks to put upon Plaintiff, Judge Ott properly notes:

> [Plaintiff argues] whatever [the executives' lack of] personal involvement in particular challenged decisions related to Plaintiff's own employment, he is entitled to depose them on the basis that they, "as corporate officers, are or were all equally tasked with making sure the Defendant complied with all laws, including antidiscrimination laws." [ ] [T]hat kind of "the-buck-stops-here" argument goes too far. By that logic, Bill Gates would have been fair game to be deposed in virtually every lawsuit against Microsoft, for discrimination or, indeed, just about anything else, no matter how remote his involvement in the events or decisions underlying the litigation.

*Id.*, at *5.

Again Defendant misses the mark: Ms. Casey <u>personally</u> participated in the Martha Swann's grievance hearing and was <u>personally</u> responsible for authorizing publication of the fault-laden Corporate Compliance Policies at issue.

## CONCLUSION

Ms. Roben Casey neither is nor was an "apex" employee of EAMC – certainly not in 2022 and into 2023. She was below other EAMC employees in its corporate hierarchy. She participated in Martha Swann's grievance hearing and her, Ms. Casey's, questions, opinions, accusations made and interactions with Plaintiff were unique and were her own. No other grievance panel member can (legitimately) read Ms. Casey's mind or speak for her.

As the "final word" and authority on EAMC's Corporate Compliance Policy that one or more other EAMC decision makers reviewed and – at least in part – relied on in upholding Plaintiff's firing, Ms. Casey occupies a unique position and is the best person to answer questions about that policy. <u>Only</u> Ms. Casey is named in association with the Corporate Compliance Policy.

Ms. Casey's attendance at and participation in Plaintiff's grievance hearing was as a "panel member," not as a legal representative. She was, basically, an "investigator" and, from Plaintiff's viewpoint, a biased interrogator.

The information Plaintiff seeks from a relatively short Roben Casey deposition is relevant to Plaintiff's discrimination and retaliation claims. The information regarding Ms. Casey's own grievance hearing questions and accusations, and own omissions regarding Title VII and the Equal Pay Act from EAMC's Corporate Compliance Policies (or giving <u>her</u> blessing to a "committee's" omissions after reviewing same), is not available from any other source but Ms. Casey. A two or three hour deposition in or near EAMC is hardly "burdensome" to Ms. Casey. Plaintiff requested all notes taken at the January 24, 2023, grievance hearing and received scant few, and none from Ms. Casey.[3]

WHEREFORE, THE PREMISES CONSIDERED, Plaintiff respectfully requests the Court grant her Motion and enter an Order compelling Defendant to effectuate the oral deposition of its employee, Roben Casey, either within the time allowed under the current case Scheduling Order, or at such time as the Court would allow the parties to schedule and complete same (but within a reasonable time by no later than June 27, 2025. Plaintiff additionally requests any other further relief to which the Court considers fit and proper under the relevant Federal Rules and circumstances.

---

[3] In her May 28, 2025, deposition, Human Resources Vice President Johnston testified that she took notes at Martha Swann's grievance hearing, but "lost" or "misplaced" the notebook in which she made those notes. She testified that she did not notice the notebook had gone missing until sometime after Plaintiff served Requests for Production in this case in late summer of 2024. This despite Ms. Johnston's testimony that the her grievance hearing notes were among other "important" notes in the notebook that went missing. Again, Plaintiff's counsel is forced to paraphrase testimony taken less than two (2) weeks prior as the transcript has yet to by typed-up.

Respectfully filed and served on this, the 2nd day of June, 2025.

> s/ *Richard R. Newton*
> Richard R. Newton, Attorney at Law, P.C.
> Counsel for Plaintiff Martha Swann
> 7027 Old Madison Pike – Ste. 108
> Huntsville, AL  35806
> Tel: (205) 356-2498
> richardrussellnewton@gmail.com
> ASB-0776-w85r

## CERTIFICATE OF SERVICE

This is to certify that on this, the 2nd day of June, 2025, I served the foregoing Motion to Compel Deposition on Defendant by sending same by email to its attorneys of record via their respective emails of record, to wit:

> Warren Lightfoot, Esq.   *wlightfoot@maynardnexsen.com*
> Brock Phillips, Esq.     *bphillips@maynardnexsen.com*
> Maynard Nexsen PC
> 1901 Sixth Avenue North, Suite 1700
> Birmingham, AL 35203

> *s/ Richard R. Newton*