**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARTHA SWANN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No.  2:24-cv-00244** |
| | ) | |
| **EAST ALABAMA MEDICAL** | ) | |
| **CENTER,** | ) | |
| | ) | |
| **Defendant.** | | |

**<u>DEFENDANT EAST ALABAMA MEDICAL CENTER'S
RESPONSE TO PLAINTIFF'S MOTION TO COMPEL DEPOSITION
AND MOTION FOR PROTECTIVE ORDER</u>**

Defendant East Alabama Medical Center ("EAMC"), by and through its undersigned counsel, hereby responds to Plaintiff Martha Swann's ("Plaintiff") June 2, 2025 Motion to Compel the Deposition of EAMC's Chief Legal and Governance Officer Roben Casey ("Casey") (Doc. 34) and moves for a Protective Order in response to Plaintiff's Motion. As explained in more detail below, Casey has no firsthand information relevant to Plaintiff's claims of discrimination and retaliation under Title VII and the Equal Pay Act. In fact, Casey (who is a senior executive at EAMC) has no unique, non-repetitive, firsthand knowledge of any relevant facts at issue in this case. Her deposition is therefore shielded by the Apex doctrine. In further support of this Response, EAMC states as follows:

1. Plaintiff filed her Complaint in this case on April 25, 2024. (Doc. 1.) Plaintiff's Complaint contains claims of discrimination and harassment under Title VII and the Equal Pay Act. (Doc. 1.) More specifically, Plaintiff alleges that she was unlawfully paid less than male co-workers and that the December 30, 2022 termination of her employment was in retaliation for raising pay-related complaints. (Doc. 1.) EAMC has denied these and all other material allegations in Plaintiff's Complaint. (Doc. 8.)

2. As detailed in Plaintiff's Motion to Compel, Plaintiff has noticed the deposition of Casey, EAMC's Chief Legal and Governance Officer. (Doc. 34.) EAMC has objected to Casey's deposition. (*Id*.)

3. Casey does not have firsthand information relevant to Plaintiff's claims in this case. Casey never made or been part of any decision related to Plaintiff's rate of pay during Plaintiff's employment with EAMC. (*See* Declaration of Roben Casey, submitted herewith as Exhibit A ("Ex. A"), ¶ 7.) Casey was not aware of any complaints (whether related to pay or otherwise) that Plaintiff made during her employment with EAMC until Casey's participation on the grievance panel. (Ex. A, ¶ 9.) Casey never played any part in any investigation or response to any complaint made by Plaintiff during her employment with EAMC. (Ex. A, ¶ 9.) Casey never played any role in issuing disciplinary action to Plaintiff during Plaintiff's employment with EAMC, including but not limited to the termination of Plaintiff's

employment. (Ex. A, ¶ 8.) Casey had no personal interaction with Plaintiff until Plaintiff's grievance hearing on January 24, 2023. (Ex. A, ¶ 6.)

4.    Given Casey's extremely limited knowledge related only to post-termination events, EAMC did not identify her as a witness in its Initial Disclosures, which were served to Plaintiff on September 10, 2024. Plaintiff seeks to elude this fact by arguing that EAMC's reference in its Initial Disclosures to "[a]ll individuals identified in Plaintiff's Initial and/or Supplemental Disclosures" amounts to EAMC identifying Casey as a witness with discoverable information. (Doc. 34 at 4.) Contrary to Plaintiff's argument, EAMC has no duty or obligation to "object to or dispute Plaintiff's disclosure of Roben Casey" as a witness. (*Id*.) To dispel any possible confusion, EAMC does not intend to identify Casey as a witness. In fact, during meet-and-confer conversations prior to Plaintiff's Motion to Compel, EAMC committed that it would not seek to utilize offensively any testimony from Casey in support of any dispositive motion. Plaintiff rejected this attempt at compromise. Nevertheless, EAMC still commits not to utilize any testimony from Casey in support of any dispositive motion, as Casey does not have firsthand knowledge of any decision related to Plaintiff's pay or disciplinary action issued to Plaintiff. (Ex. A, ¶ 7.)

5.    Federal Rule of Civil Procedure 26 provides protection "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ.

P. 26(c)(1). Accordingly, courts may issue an order protecting a party from oppressive discovery, including "forbidding the disclosure or discovery" or "prescribing a discovery method other than the one selected by the party seeking discovery." *Id*. Senior executives are particularly vulnerable to "numerous, repetitive, harassing, and abusive depositions," and therefore receive heightened protection from courts. *Brown v. Branch Banking & Tr. Co.*, No. 13-81192-CIV, 2014 WL 235455, at *2 (S.D. Fla. Jan. 22, 2014). Courts have provided this heightened protection in the form of the "apex doctrine," which District Courts within the Eleventh Circuit "have adopted . . . and routinely apply." *Aileron Inv. Mgmt., LLC v. Am. Lending Ctr., LLC*, No. 8:21-CV-146-MSS-AAS, 2021 WL 7448237, at *3 (M.D. Fla. Aug. 13, 2021).

6.      The Apex doctrine restricts depositions of senior executives unless the party seeking the deposition can establish the executive: "(1) has unique, non-repetitive, first-hand knowledge of the facts at issue, and (2) that other less intrusive means of discovery, such as interrogatories and depositions of other employees, have been exhausted without success." *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, 310 F.R.D. 523, 527 (S.D. Fla. 2015). The party seeking the deposition carries the burden of proof "to show that the deposition is necessary." *Id*. Here, Plaintiff has not shown that Casey has any non-repetitive, first-hand information that could not be (and/or have not already been) obtained elsewhere.

7.    As EAMC's Chief Legal and Governance Officer, there can be no dispute that she is an "Apex" executive. *See Sun Cap. Partners, Inc.*, 310 F.R.D. at 527 (applying Apex doctrine General Counsel); *see also Tillman v. Advanced Pub. Safety, Inc.*, No. 15-CV-81782, 2017 WL 679980, at *2 (S.D. Fla. Feb. 16, 2017) (explaining that the deposition of a company's general counsel constituted what is "commonly referred to as an apex deposition") (internal citations omitted).

8.    Plaintiff resists the commonsense and inescapable conclusion that EAMC's highest-ranking legal officer is a senior executive subject to the Apex doctrine. (Doc. 34 at 6.) Plaintiff incorrectly claims that Sarah Nunnelly ("Nunnelly") (Chief Strategy and Business Development Officer) was a "higher-ranking EAMC official" than Casey. (Doc. 34 at 6.) Accordingly, because EAMC did not object to Nunnelly's deposition on Apex grounds, Plaintiff argues that Casey cannot be an Apex executive.

9.    First, Nunnelly is not "higher-ranking" than Casey and was not "higher-ranking" in January 2023. Plaintiff relies solely on job titles displayed on EAMC's website in or around January 2023 and notes that Nunnelly has an "Executive Vice President" title while Casey was merely listed as a "Vice President." (Doc. 34 at 6.) These job titles do not reflect the hierarchical structure of EAMC's executive organizational chart in January 2023. At that time, Casey and Nunnelly reported

5

directly to EAMC's Chief Executive Officer Laura Grill. (Ex. A, ¶¶, 2–3.) Casey has never directly reported to Nunnelly during her employment with EAMC. (*Id.*)

10.     Second, even assuming that Nunnelly is/was "higher-ranking" than Casey (which she is not), Plaintiff is unable to cite a single case which holds that failure to make Apex objections for one executive automatically voids all Apex objections for other executives. To be sure, there is a compelling argument that given Nunnelly's Executive Vice President/Chief Operating Officer role she held in January 2023, the Apex doctrine applies to her as well. *See*, *e.g.*, *Younes v. 7-Eleven, Inc.*, Civ. A. No. 13-3500, 2015 WL 12844446, at *2 (D.N.J. Aug. 19, 2015) (granting motion for protective order to prevent deposition of former Executive Vice President and Chief Operating Officer pursuant to the Apex doctrine). However, in a good-faith effort to work together with Plaintiff during discovery, EAMC agreed to make Nunnelly available for deposition without asserting the Apex defense. In fact, Nunnelly's deposition is scheduled to take place on Monday, June 9, 2025 in Opelika, AL. During written discovery, EAMC provided Plaintiff with a page of handwritten notes Nunnelly took during Plaintiff's grievance hearing. There are no such handwritten notes from Casey from Plaintiff's grievance hearing. Further, unlike Casey, Nunnelly is not an attorney and certainly not the highest-ranking legal employee at EAMC. *See Sun Cap. Partners, Inc.*, 310 F.R.D. at 527 (granting protective order in response to noticed deposition of Company's general counsel and

explaining heightened burden for attorney depositions noting that "depositions of attorneys inherently constitute an invitation to harass the attorney and parties, and to disrupt and delay the case").

11.     Nunnelly—like Susan Johnston ("Johnston") (Vice President of Human Resources) who was deposed on May 28, 2025 in her individual capacity and as EAMC's 30(b)(6) corporate representative—was present for Plaintiff's January 24, 2023 grievance hearing and can testify to anything that happened during that hearing. Of course, this hearing-related testimony from Nunnelly, Johnston, or any other witness is unnecessary in this case because Plaintiff covertly took an audio recording of the grievance hearing despite Johnston's clear instruction that she was not permitted to record the meeting. Plaintiff provided in discovery an audio recording and corresponding transcript of this grievance hearing. (*See* Exhibit 1 to Ex. A.) The recording and transcript capture the entirety of the January 24, 2023 grievance hearing. (*Id.*)

12.     An Apex deposition of EAMC's Chief Legal Officer is not appropriate because she has no unique, non-repetitive, firsthand knowledge of any relevant facts at issue in this case. Casey had no input into any pay-related decision for Plaintiff and has no knowledge related to any pay-related concerns Plaintiff may have raised during her employment. (Ex. A, ¶ 4.) Likewise, Casey had no involvement in any disciplinary action issued to Plaintiff, including the decision to terminate Plaintiff's

employment. (Ex. A, ¶ 8.) In other words, Casey has no knowledge or information related to the underlying adverse employment action or pay-related decisions. (Ex. A, ¶¶ 6-9.) "A protective order precluding the deposition of a high-ranking executive officer will be granted where the officer possesses no unique knowledge regarding the underlying facts of the action and files a declaration stating his or her lack of knowledge." *McMahon v. Presidential Airways, Inc.*, No. 6:05CV1002-ORL28JGC, 2006 WL 5359797, at *2 (M.D. Fla. Jan. 18, 2006).

13.    Plaintiff's Motion to Compel recognizes that Casey played no role in the underlying decisions related to Plaintiff's employment. Plaintiff states she seeks to depose Casey "only . . . in relation to" (i) Casey's participation in the January 24, 2023 grievance hearing, and (ii) her role in developing EAMC's Corporate Compliance Policy. (Doc. 34 at 12.)

14.    As for Casey's "participation in the January 24, 2023 grievance hearing," she has no "unique, non-repetitive, first-hand knowledge" of that hearing. As Plaintiff acknowledges, besides Casey, six (6) other EAMC Vice Presidents participated in this grievance hearing, including Johnston (whom Plaintiff has already deposed) and Nunnelly (whom Plaintiff will depose next week). *See Graves v. Shelby Cty. Bd. of Ed.*, No. 2:14-cv-02992dkv, 2015 WL 13116991, at *6 (W.D. Tenn. Sept. 11, 2015) (granting protective order where information sought from general counsel could be obtained through other depositions).During Johnston's

deposition (which functioned as her personal deposition and as EAMC's corporate representative deposition), Plaintiff asked very limited questions regarding the January 24, 2023 grievance hearing. This severely undercuts Plaintiff's claim that deposing Casey is necessary. In any event, the availability of other eyewitnesses who participated in the grievance hearing demonstrates there are "other less intrusive means of discovery" available to Plaintiff to gather the information she seeks from Casey (*i.e.*, Casey's "participation in the January 24, 2023 grievance hearing"). Indeed, Plaintiff herself recorded this grievance hearing and provided a written transcript of that meeting. Neither party disputes the authenticity of this recording or what was said at Plaintiff's January 24, 2023 grievance hearing. Given this ample undisputed evidence regarding the grievance hearing, it is clear that Casey does not have "unique, non-repetitive, first-hand knowledge" about "her participation in the January 24, 2023 grievance hearing." (Doc. 34 at 12); *Sun Cap. Partners*, 310 F.R.D. at 527. Eeven if Casey has some personal knowledge about the January 24 hearing, that knowledge is not unique but is instead also available from other employees. *See Computer Acceleration Corp. v. Microsoft Corp.*, 2007 WL 7684605, at *1 (E.D. Tex. June 15, 2007) (requested deposition of Bill Gates was denied when plaintiffs failed to show that even if Mr. Gates had personal knowledge, it is not "unique" or "unavailable from lower-level employees"); *Akridge v. Alfa Mut. Ins. Co.*, No. 2:17-CV-372-GMB, 2018 WL 3626115, at *2 (M.D. Ala. July 30, 2018) (denying

Plaintiff's motion to compel the deposition of an Executive Vice President of Human Resources of Alfa Mutual Insurance Company in an employment case reasoning that even if the executive had some relevant knowledge, there had been no showing that he had unique personal knowledge, and Plaintiff had already taken the depositions of the relevant, lower-level, decision makers).

15.     Plaintiff's second stated basis for deposing Casey is question Casey on "her role as the final authority to review/approve/sign-off on the EAMC Corporate Compliance Policy in effect during 2022 through January 2023." (Doc. 34 at 12.) Of course, EAMC's Corporate Compliance Policy has absolutely nothing to do with this case. EAMC never issued any disciplinary action to Plaintiff for violations of its Corporate Compliance Policy nor is there any allegation to that effect in Plaintiff's Complaint. (Doc. 1.) At most, Plaintiff claims without evidentiary support that Johnston testified that she reviewed (among other documents) the Corporate Compliance Policy prior to Plaintiff's grievance hearing. (Doc. 34 at 7.) However, Plaintiff does not even attempt to explain how this makes the Corporate Compliance Policy relevant or in any way related to the termination of her employment or her claims at issue in this case.

## CONCLUSION

Because Plaintiff has not met her burden to establish the limited exceptions to prohibitions on Apex depositions, EAMC respectfully submits the Court should

deny Plaintiff's Motion to Compel the deposition of Roben Casey and instead issue a Protective Order preventing the deposition of Ms. Casey. As explained herein, Casey does not have unique, first-hand information relevant to Plaintiff's claims in this case. Moreover, there are a number of less-intrusive alternatives for the same information Plaintiff claims to seek from Casey, including other witnesses who were present for and participated in the grievance hearing and/or Plaintiff's audio recording of the meeting. Therefore, EAMC respectfully requests the Court deny Plaintiff's Motion to Compel and grant EAMC's Motion for Protective Order.

Respectfully submitted,

*/s/ Warren B. Lightfoot, Jr.*
Warren B. Lightfoot, Jr.
Brock Phillips
Maynard Nexsen, P.C.
1901 Sixth Avenue North
1700 Regions/Harbert Plaza
Birmingham, AL 35203
Phone: (205) 254-1000
Fax: (205) 254-1999
Email:  wlightfoot@maynardnexsen.com
        bphillips@maynardnexsen.com
*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 6, 2025 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notice to the following:

    Richard R. Newton
    2100 Southbridge Parkway, Suite 650
    Birmingham, AL 35213
    (205) 356-2498
    richardrussellnewton@gmail.com


    */s/ Warren B. Lightfoot, Jr.*
    OF COUNSEL