IN THE UNITED STATES DISTRICT COURT
FOR MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| MARTHA SWANN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No.: 3:24-cv-00244-RAH-JTA |
| vs. ) | |
| ) | JURY DEMAND |
| EAST ALABAMA HEALTH CARE ) | |
| AUTHORITY, DBA EAST ALABAMA ) | |
| MEDICAL CENTER, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S
RESPONSE TO MOTION TO COMPEL DEPOSITION
OF DEFENDANT EMPLOYEE ROBEN CASEY**

COMES NOW the Plaintiff, by and through counsel of record, and files and serves the following Reply to Defendant East Alabama Medical Center's [EAMC's] Response to Plaintiff's Motion to Compel the deposition of EAMC employee Roben Casey. Plaintiff respectfully shows the following:

INTRODUCTION

In its Response to Plaintiff's Motion to Compel, Defendant EAMC fails to provide any substantive argument against Plaintiff's Motion to Compel. First, EAMC's response ignores or tries to gloss over the fact that its employee, Roben Casey, did not attend and participate in Plaintiff's January 2023 grievance hearing as EAMC's legal representative. Second, EAMC's "apex" argument is flawed on many fronts, including: (I) Roben

1

Casey had and has direct and personal knowledge to matters directly impacting on this case; (II) when a grievance panel is comprised of only company vice presidents, there's no "lower echelon" person whom Plaintiff can depose to obtain the needed information; (III) Roben Casey lead the grievance panel's charge to either redirect or dismiss any attempts by Martha Swann to discuss retaliation or male-female workplace double standards; (IV) Roben Casey's own grievance hearing notes – like Vice President Susan Johnston's – have "gone missing;" (V) Roben Casey was a member of the grievance panel that upheld Plaintiff's termination and refused to rehire / reinstate her; (VI) Roben Casey's role as EAMC's Compliance Officer and final word on this Defendant's Corporate Compliance Policy and Standards of Conduct is relevant to this workplace discrimination case; and, (VII), Defendant's Response cases cited, while providing standard doctrine regarding "apex" and other law, are simply out-of-sync with the facts present in this matter (and one was reversed by the 11th Circuit on the apex issue).

## I. Roben Casey had and has direct and personal knowledge of relevant issues and facts in this case

Defendant EAMC cannot avoid the fact that its employee Roben Casey was a panel member, present at and arguably the most vocal member of Plaintiff Martha Swann's January 24, 2023, grievance hearing. *See* EXHIBIT 1, *Reply Declaration of Martha Swann*. Roben Casey's hearing participation were direct and personal. But, as Plaintiff notes in EX. 1, ¶ 22, she cannot read Ms. Casey's mind nor fairly speculate on

Ms. Casey's motivations. Therefore, a short (2 or 3 hour) deposition is not only reasonable, but necessary to suss out those motivations, contours and rationales behind Roben Casey's actions – actions aimed directly at Martha Swann, personally, mere feet away from Plaintiff Swann.

During the grievance hearing, what were Roben Casey's reasons for banging the drum of "insubordination" against Martha Swann when, (1) the John Morris termination document(s) made no mention of "insubordination;" and, (2), even if Swann committed all the out-of-line acts she was accused of committing by Morris on December 27, 2022, none of them even fit EAMC's definition of "insubordination?" See, EX. 1, ¶¶ 23, 24 and 25.  Also, what *was* Casey's reasoning and rationale for *not* caring that men were not written up, let alone fired, for workplace wrongdoing or policy violations? Only Roben Casey can answer and be tested regarding these and other related questions.

## II. EAMC's January 24, 2023, Grievance Panel was comprised of Vice Presidents only

In Martha Swann's grievance panel, the one that made job-related "life or death" decisions, was made up of *only* company Vice Presidents. There's no "lower echelon" person, no file clerk or groundskeeper, Plaintiff can depose to discover the factual contours of that panel. In fact, choosing to depose the three (3) grievance panel note takers – Susan Johnston, Sarah Nunnelly and Roben Casey – *is* a compromise:  Plaintiff should be entitled to depose all seven (7) EAMC panel members, to test their

recollections against one another and learn the reasons a couple, or several, stayed virtually silent, passive, while others (notably Casey and Johnston) did most of the talking, and accusing.

### III. At the Plaintiff's EAMC grievance hearing Roben Casey lead the charge against Martha Swann

It was Roben Casey, not EAMC Vice President Dennis Thrasher nor Vice President Chris Clark, who took the lead in the January 24, 2023, grievance hearing. Undersigned counsel holds out to both the Court and to Defendant that had the words spoken to, questions asked of, and interrogation undertaken towards, Martha Swann been conducted by Mr. Thrasher (who, in fact, asked one question) or Mr. Clark (who asked none), and had Swann seen either of them taking notes throughout the hearing, then it would be Thrasher or Clark Plaintiff would be seeking to depose, not Roben Casey. This also debunk EAMC's accusation Swann seeks Casey's deposition owing to her "title," or to "harass" Casey or for "annoyance." (Doc 36, ¶¶ 5, 9-10).

### IV. Roben Casey's grievance hearing notes have gone missing

Defendant concedes Casey took notes during Plaintiff's grievance hearing. EX 1, *Exhibit B*, pp. 5-9); and see, EX 1, p. 4, Items 10-11; EX. 1, *Exhibit A*, p. 17). But – like EAMC V.P. Susan Johnston's notes – Casey "cannot locate" her notes. This is uncanny: Both EAMC's VP of Human Resources and its General Counsel / Compliance Officer, cannot locate or have otherwise lost their grievance hearing notes. Plaintiff should be

4

entitled to depose Roben Casey regarding these missing notes, or, in the alternative, explore Ms. Casey's own practice for when she considers taking meeting / hearing minutes; or when she believes maintaining and preserving EAMC meeting or hearing notes, minutes, is a worthwhile endeavor.

Plaintiff's making an audio recording of the January 2023 grievance hearing seems like it should be *welcomed* and appreciated by EAMC and its grievance panel members, since the only other contemporaneous record of the hearing consisted of of three (3) short lines scrawled by Chief Operating Officer Sarah Nunnelly. EXHIBIT 2.

### V.  Roben Casey was a member of the grievance panel that upheld Plaintiff's termination, refusing to rehire / reinstate her

On January 30, 2023, EAMC Human Resources Vice President Susan Johnston sent Plaintiff a letter which, following a Dear Martha salutation, reads *in toto*:

> This letter is in follow up to your meeting with the grievance panel on Tuesday, January 24th. The grievance panel has decided to uphold your termination. This decision is final, and your termination date will remain December 30, 2022. If you have any questions, please feel free to contact me.

EX. 1, *Exhibit C*.

Roben Casey was one of those "grievance panel" members which decided to uphold Plaintiff's termination (thus refusing to rehire / reinstate Plaintiff. Again, while it would be reasonable for Plaintiff to have sought to depose all seven (7) grievance panel members, limiting this panel member depositions to three (3) saves time, money, and

repetition and duplication (even though, regarding "duplication," it's been undersigned counsel's experience that seven (7) people – even if on the same "team" – will likely give varied versions of the same event in which they participated). Still, compromises often need be made, so deposing only Ms. Johnston, Ms. Nunnelly and Ms. Casey is one Plaintiff chose to make.

### VI.  Re:  Roben Casey's role as EAMC's Compliance Officer

Out of the 15 pages EAMC dedicates to "Corporate Compliance" and "Standards of Conduct," only a single brief paragraph claims EAMC is "firmly dedicated to a policy of non-discrimination in employment..." Plaintiff takes issue with this. (Doc. 34-2, Exhibit 2 to Plaintiff's Motion to Compel, p. 13, Item 12). Another small paragraph in this same Corporate Compliance Policy states in sum and substance that EAMC will not enter contracts with those who discriminate, which is laudable.

Plaintiff contends that this policy is nothing but boilerplate. Additionally, and importantly, this Corporate Compliance Policy Item 12 is silent on the matter of Retaliation. That is, the Item 12 says <u>nothing</u> about Retaliation for opposing workplace gender, or any, discrimination or participating in an investigation of such discrimination being adverse to EAMC policy. Yet Item 6 (Medicare-Medicaid Anti-Fraud, Waste and Abuse) – a section that covers some 5 pages and almost 3-dozen paragraphs – notes a policy prohibiting retaliation for whistleblowing as related to the federal False Claims Act and the Elder Justice Act. (Doc. 34-2, p. 7, 10).  EAMC's Corporate Compliance is

simply silent about both Title VII's and the Equal Pay Act's prohibition on Retaliation for opposing workplace discrimination; this Roben Casey-approved Corporate Compliance Policy at best gives short-shrift to these workplace laws.

This is a legitimate area of investigation that a deposition – limited though it may be – would be the right and proper tool to use. As the Compliance Officer, Roben Casey is the person to depose regarding these matters.

**VII. Defendant's case law does not support its argument**

In its Response Defendant's final case citation is *Akridge v. Alfa Mut. Ins. Co.,* No. 2:17- CV-372-GMB, 2018 WL 3626115, at *2 (M.D. Ala. July 30, 2018) in support of its attempt to shield Roben Casey from deposition as an "apex" official.

In fact, in 2021 the 11th Circuit reversed this Middle District's 2018 decision vacated summary judgment and remanded the case back to the Middle District to allow Akridge to depose Forrest (the argued "apex" officer). *Akridge v. Alfa Mut. Ins.*, 1 F.4th 1271, 1278 (11th Cir. 2021).

In its 2021 decision, the Circuit Court began its analysis. . .

> . . . with Federal Rule of Civil Procedure 26(b)(1)[,] which sets forth the general scope of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" (citation omitted). Relevance in the context of discovery "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund*, *Inc*. *v. Sanders*, 437 U.S. 340, 351 (1978). And since the Rules "strongly favor full discovery whenever possible," *Republic of Ecuador*

*v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013), a civil litigant is generally entitled to "any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence." *Degen v. United States*, 517 U.S. 820, 825-26 (1996) (internal quotation mark omitted). Accordingly, information "need not be admissible in evidence to be discoverable." *Fed. R. Civ. P.* 26(b)(1). *Akridge v. Alfa Mut. Ins.*, 1 F.4th 1271, 1276 (11th Cir. 2021).

The Circuit Court continued:

The Supreme Court has stressed on multiple occasions the need to construe the Rules liberally to allow for robust discovery. *See, e.g., Hickman v. Taylor,* 329 U.S. 495, 507 (1947) ("[T]he discovery provisions are to be applied as broadly and liberally as possible."); *Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964) ("[T]he deposition-discovery rules are to be accorded a broad and liberal treatment."). *Akridge v. Alfa Mut. Ins.*, 1 F.4th 1271, 1276-77 (11th Cir. 2021).

Finally, and particularly relevant here, the 11th Circuit found:

The factors that would make deposing Forrest "burdensome" – according to Alfa – are the very same ones that make his testimony relevant and important to Akridge's case. . . We do not doubt that, as an Executive Vice President, Forrest is an individual with a busy work schedule whose time is valued by Alfa. However, "[d]iscovery is not a one-way proposition," and issues – especially those involving claims of discrimination – "cannot be resolved by a doctrine of favoring one class of litigants over another." *Schlagenhauf*, 379 U.S. at 113 (internal quotation marks omitted). Further, any burden this deposition would pose is outweighed by the benefit of obtaining a full and accurate understanding of the facts in the pursuit of a just result. *See Bell v. Swift & Co.,* 283 F.2d 407, 409 (5th Cir. 1960) ("The [discovery] rules are in the interest of the administration of justice and transcend in importance mere inconvenience to a party litigant."). *Akridge v. Alfa Mut. Ins.*, 1 F.4th 1271, 1278 (11th Cir. 2021).

Roben Casey was a decision-maker. She served on the grievance panel that upheld Plaintiff's termination following its refusal to listen *fully* to Plaintiff's attempts to talk

about both workplace retaliation and male-female double standards in during the grievance panel hearing.

Roben Casey is not noticed for deposition because of her title or mere corporate position; she's notice for deposition owing to her actions, her omissions, her words, her very personal accusations against Martha, for her role, decisions, choices and priorities made, and for information she possesses, all of which EAMC struggles to hide.

> A corporate officer is not exempt from deposition by the "apex" doctrine merely because he is a corporate official. Rather, the doctrine may be invoked only when the deponent has been noticed for deposition because of his corporate position. *Simon v. Bridewell*, 950 S.W.2d 439, 442 (Tex. App. 1997).

In its Response, Defendant cites about a dozen cases (including the reversed *Akridge*) which support the proposition that corporate officers cloaked in apexness are shielded from deposition. Plaintiff does not dispute this. What Plaintiff disputes is that Roben Casey is entitled *to* that apex designation.

Ms. Casey attended Martha Swann's grievance hearing as a fact witness, not as general counsel or, according to EAMC, as "legal representative," but, rather, in a *de facto* investigative / Human Resources / compliance role. Neither did she discuss or cite law or legal arguments at the hearing. Casey's presence at the hearing was as a decisionmaker and a factfinder in EAMC's management process.

Ms. Casey questioned Ms. Swann and pointed or at least alluded to her firing

because of "insubordination," although that was not the stated reason in the termination paperwork. This was a factual assertion, not a legal assertion. Casey did not act in a legal capacity.

In *Kimberly Regenesis, LLC v. Lee Cnty.,* 64 F.4th 1253 (11th Cir. 2023), the Court rejected apex protections for public officials with personal knowledge of relevant events. The lesson: Title alone does not trigger apex protections – the key question is whether there is personal knowledge. "[T]he magistrate judge found that the apex doctrine was inapplicable because the commissioners had 'personal knowledge' of the facts." *Kimberly Regenesis, LLC v. Lee Cty.*, 64 F.4th 1253, 1257 (11th Cir. 2023)

At its core, the apex doctrine is intended "to balance the competing goals of limiting potential discovery abuse and ensuring litigants' access to necessary information." *In re Amend. to Fla. Rule of Civ. Proc. 1.280*, 324 So. 3d 459, 461 (Fla. 2021). *NCAA v. Finnerty*, 191 N.E.3d 211, 219 (Ind. 2022). In the case at bar Plaintiff meets her burden and strikes that balance.

Both Eleventh Circuit and persuasive authorities have repeatedly rejected that protection where the executive has personal, direct knowledge of facts relevant to the litigation.

Finally, Plaintiff's counsel can find nothing in EAMC's Response that disputes the cases cited, or propositions they stand for, in Plaintiff's Motion to Compel.

**VIII. The compromise; and the law on reinstatement / rehiring**

**A.** Defendant's "attempt to compromise" assertion is misguided. In its Response Defendant asserts it sought to compromise with Plaintiff by not "seek[ing] to utilize offensively any testimony from Casey in support of any dispositive motion." This is a red herring and is no "compromise." First, it ignores that Casey is a fact witness that Plaintiff is entitled to depose. Second, EAMC made no pledge to waive using Casey as an "offensive" witness at trial, or as a rebuttal witness in either a dispositive motion or at trial. Third, the compromises made have been from Plaintiff's side: Seeking only the three (3) grievance hearing note-takers' depositions, not all seven (7) panel members who attended the January 2023 hearing and pledging to limit Ms. Casey's deposition to three (3) hours. It also cannot be overstated that Casey was arguably the most vocal – and accusatory – member of the grievance panel during the January 24, 2023 hearing.

**B.** Another EAMC canard, or some type of non-sequitur argument, asserts that the grievance process and hearing are somehow "irrelevant," that they're "not related to [Plaintiff's] termination or claims at issue in this case." (Doc. 36, p. 10, Item 15).

**(1)** A review of the Complaint (Doc. 1) shows Plaintiff's grievance-panel / hearing claims include, but are not limited to, EAMC's bad faith which infused the process; the extent to which – pre-grievance hearing – Plaintiff reasonably believed she had a chance at reinstatement; the degree to which the panel members were belligerent and demonstrated that they had no intention of giving Plaintiff a fair hearing regarding

11

gender discrimination within Clinical Engineering; and the grievance panel's failure or refusal to conduct a thorough, good faith, investigation of Plaintiff's assertions of workplace discrimination (in fact, cutting her off, shutting her down, and re-directing Plaintiff whenever she brought up discrimination-related subjects (e.g., retaliation, male-female disciplinary differences, etc.). Defendant seems to have overlooked those claims and the degree to which they were and remain inextricably intertwined with her other pay discrimination and retaliation claims. (Doc. 1, ¶¶ 98, 99, 109, 145, 146, 147).

**(2)** Defendant appears to argue that any and every EAMC act and omission following its firing Martha Swann on December 30, 2022, is "irrelevant" or has no bearing on her 2022 case and claims. If this is EAMC's argument, then it's a specious one.

In a long-standing case the 11th Circuit is clear: "A simple request for reinstatement 'seeks to redress the original termination.'" *Burnam v. Amoco Container Company*, 755 F.2d 893, 894, (11th Cir. 1985), quoting *Collins v. United Airlines, Inc.*, 514 F.2d 594, 596 (9th Cir.1975).

> A discharged employee who seeks to be reinstated is really litigating the unfairness of his original discharge because only if the original discharge was discriminatory is he entitled to be reinstated as if he had never ceased working for the employer. <u>The word reinstatement must be employed in this connection as the equivalent of uninterrupted employment</u>.

*Collins, Id*. (Emphasis added).

This doctrine has been used to prevent aggrieved employees from resuscitating

12

Title VII firing cases for the EEOC charge filing purposes where the 180 filing deadline has passed (by merely re-applying for employment following the tolling of that 180 period). Nevertheless, the principle and effect, and here, Plaintiff's grievance, and the January 2023 grievance process – attended with all the discriminatory and/or continuation of discriminatory acts perpetrated by EAMC in 2022 – is part and parcel and a continuation of, Plaintiff's 2022 claims.

## CONCLUSION

At least for this case, Roben Casey is simply not an "apex" employee. Even if one assumed *arguendo* that she was in January 2023, these facts remain: ***(a)*** Ms. Casey had and maintains a unique personal knowledge of facts involved in this case (e.g., her own participation in Martha Swann's grievance hearing, her notes that have somehow [like VP Susan Johnston's] gone missing, and own dismissive and/or adversarial behavior towards Martha Swann at grievance hearing); ***(b)*** a three (3) hour deposition is hardly "burdensome;" and, ***(c)***, our Article III Courts agree discovery should be freely allowed within the parameters of fairness.

By EAMC's own admission, Ms. Casey did not attend nor participate in Plaintiff Martha Swann's January 24, 2023, grievance hearing as EAMC's legal representative.

WHEREFORE, Plaintiff respectfully restates her request that the Court allow up to a 3 hour deposition of Ms. Casey and for any other or additional relief the Court deems fitting, proper and just to grant.

Respectfully filed and served on this, the 10th day of June, 2025.

> *s/ Richard R. Newton*
> Richard R. Newton, Attorney at Law, P.C.
> Counsel for Plaintiff Martha Swann
> 7027 Old Madison Pike – Ste. 108
> Huntsville, AL  35806
> Tel: (205) 356-2498
> richardrussellnewton@gmail.com
> ASB-0776-w85r

## CERTIFICATE OF SERVICE

This is to certify that on this, the 10th day of June, 2025, I served the foregoing Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Compel Deposition on Defendant by sending same by email to its attorneys of record via their respective emails of record, to wit:

> Warren Lightfoot, Esq.   *wlightfoot@maynardnexsen.com*
> Brock Phillips, Esq.   *bphillips@maynardnexsen.com*
> Maynard Nexsen PC
> 1901 Sixth Avenue North, Suite 1700
> Birmingham, AL 35203

*s/ Richard R. Newton*